IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


NOEL A. LINDER,

                    Plaintiff,

vs.                                    Case No. 09-1210-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 22, 2008, administrative law judge (ALJ) Edmund
C. Werre issued his decision (R. at 15-25). Plaintiff alleges
that she has been disabled since December 31, 1999 (R. at 15).
Plaintiff is insured for disability insurance benefits through
December 31, 2004 (R. at 17). At step one, the ALJ determined
that plaintiff has not performed substantial gainful activity
since her alleged onset date of December 31, 1999 (R. at 17). At
step two, the ALJ found that plaintiff had the following severe

4

impairments: degenerative disc disease, pseudo-seizure disorder
and manic depressive disorder (R. at 17).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 17-19).  After determining plaintiff's
RFC (R. at 19), the ALJ found at step four that plaintiff is
unable to perform any past relevant work (R. at 23).  At step
five, the ALJ found that plaintiff could perform other jobs that
exist in significant numbers in the national economy (R. at 24-
25).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 25).

**III.  Was the ALJ's finding that plaintiff's impairment did not meet or equal listed impairment 12.04 supported by substantial evidence?**

At step three, plaintiff has the burden of demonstrating,
through medical evidence, that his/her impairments meet all of
the specified medical criteria contained in a particular listing.
Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22,
2001).  An impairment that manifests only some of those criteria,
no matter how severely, does not qualify.  Sullivan v. Zebley,
493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the
listed impairments, if met, operate to cut off further inquiry,
they should not be read expansively.  Caviness v. Apfel, 4 F.
Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why

5

he found that the plaintiff was not disabled at step three.  This court should not properly engage in the task of weighing evidence in disability cases.  The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards.  In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment.  Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

The ALJ found that plaintiff's impairments did not meet or equal listed impairment 12.04 (affective disorders).[1]  More specifically, the ALJ found that plaintiff's impairments do not meet either the "B" criteria or the "C" criteria of 12.04 (R. at 18-19).  The "B" criteria of 12.04 are as follows:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or

---

[1]Listed impairment 12.04 is met when both the "A" and the "B" criteria are satisfied, **or** when the requirements of the "C" criteria are satisfied.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507, emphasis added).  The "A" criteria of 12.04 is never discussed by the ALJ in his decision.

> 3. Marked difficulties in maintaining
> concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each
> of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507-508, 508).

The ALJ, citing to Exhibit 1E (adult function report, dated Feb. 23, 2005, R. at 72-79), found that plaintiff had only mild restrictions in activities of daily living, no difficulties with social functioning, and moderate difficulties with concentration, persistence, or pace (R. at 18). The ALJ also found that plaintiff had no episodes of decompensation. Therefore, the ALJ concluded that the "B" criteria of 12.04 were not met (R. at 18). The ALJ further concluded that the evidence failed to establish the presence of the "C" criteria (R. at 19). The ALJ then stated the following:

> No treating or lower level evaluating source
> has posited that the above non-listing
> level findings, either in combination or in
> light of other non-listed medical indictors,
> impose a level of debilitation which meets or
> equals any of those specified. Therefore, the
> opinions of the state agency medical
> consultants that no listings are met or
> medically equaled are given significant
> weight. (20 CFR 404. 1527(f), Social Security
> Ruling (SSR) 96-6p).

(R. at 19).

The findings by the ALJ at step three fail to discuss or accurately reflect the medical opinion evidence in the case. The court will first examine the medical evidence pertaining to the

"A" and the "B" criteria of 12.04.

In his step three analysis, the ALJ never mentioned that Dr. Quillen, plaintiff's treating psychologist, stated that plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace (R. at 787). Dr. Quillen's opinions support a finding that plaintiff's impairments met or equaled the "B" criteria of 12.04.[2] Dr. Quillen also opined that plaintiff's impairments met

---

[2]In addition to discussing the "B" criteria of 12.04 (R. at 787), Dr. Quillen also prepared a mental RFC assessment finding plaintiff moderately limited in 8 categories, and markedly limited in 11 categories (R. at 789-790). The limitations described in the paragraph "B" and "C" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment at steps 4 and 5 requires a more detailed assessment by itemizing various questions contained in the broad categories in the paragraph "B" and "C" criteria. SSR 96-8p, 1996 WL 374184 at *4.
    Subsequent to the ALJ's findings at step three, the ALJ, when discussing plaintiff's RFC, noted that Dr. Quillen had found that plaintiff had "some" marked mental limitations, but the ALJ contrasted these findings with the GAF (global assessment of functioning) scores of 65-75 indicating mild to no more than slight mental limitations (R. at 22). However, Dr. Quillen stated that the GAF scores in plaintiff's treatment notes reflected plaintiff's functioning in an environment which was highly supportive and structured in order to control her symptoms. He indicated that if she tried to work she would have decompensated quite likely all the way to a psychotic state (R. at 791-792).
    Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of

the "A" criteria of 12.04 (R. at 786-787).

Furthermore, in his decision, the ALJ, citing to treatment records, stated that Dr. Marsh did not indicate that plaintiff had marked mental limitations that would prevent her from working (R. at 23). However, following the ALJ decision, plaintiff submitted to the Appeals Council a statement from Dr. Marsh, plaintiff's treating psychiatrist (R. at 801-804). The Appeals Council made this statement part of the record (R. at 10). Therefore, that evidence will be considered by the district court in its review of the Commissioner's decision. Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994). Dr. Marsh stated

---

whether or not a claimant is disabled. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).
    Dr. Quillen, plaintiff's treating psychologist, clearly indicated that the GAF scores in the treatment notes reflect a highly supportive and structured environment and therefore do not reflect that plaintiff is able to work. Dr. Marsh, plaintiff's treating psychiatrist, subsequently stated that she agreed with the statement of Dr. Quillen (R. at 801). The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). An ALJ may reject a treatment provider's opinion outright only on the basis of contradictory medical evidence and not due to the ALJ's own credibility judgments, speculation or lay opinion. Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004). There is no medical evidence disputing the opinions of Dr. Quillen and Dr. Marsh that the GAF scores do not reflect that plaintiff is able to work.

that Dr. Quillen described very well both plaintiff's diagnosis and her functioning, and she agreed with his statement (R. at 801).[3]  Thus, plaintiff's treating psychologist and treating psychiatrist agree that plaintiff's mental impairments meet the "A" and the "B" criteria of 12.04.

The ALJ also stated that he was giving significant weight to the opinions of the state agency medical consultants that no listings were met or medically equaled.  The Psychiatric Review Technique form, prepared by Dr. Warrender on April 27, 2005, and affirmed by Dr. Jessop on September 29, 2005, looked at the "A" and the "B" criteria of 12.04 (R. at 296, 303), and concluded that plaintiff's mental impairments were not severe (R. at 293).[4]

_____

[3]Defendant argues that Dr. Marsh's report carries less weight persuasively because it was obtained after the ALJ decision, it was not new and material evidence, and the plaintiff failed to show why she could not have obtained and presented such evidence to the ALJ in the first instance (Doc. 17 at 12-13). However, the cases cited by the defendant, Wilson v. Astrue, 602 F.3d 1136, 1148-1150 (10th Cir. 2010), and Heimerman v. Chater, 939 F. Supp. 832, 834 (D. Kan. 1996), in support of these arguments are inapplicable to this case because both involve the criteria for a sentence six remand, an issue not before the court in this case.  In the case before the court, unlike Wilson, the opinion evidence from Dr. Marsh was submitted to the Appeals Council and is therefore part of the administrative record to be considered when evaluating the Commissioner's decision for substantial evidence.  Threet, 353 F.3d at 1191; O'Dell, 44 F.3d at 859.  There is no "good cause" requirement for the submission of new evidence to the Appeals Council.  O'Dell, 44 F.3d at 858.

[4]In the areas of functional limitations (the "B" criteria), Dr. Warrender and Dr. Jessop opined that plaintiff had only mild restrictions of daily activities, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (R. at

Having found no severe mental impairment at step two, these medical sources did not address (and did not need to address) whether any severe mental impairments met or equaled a listed impairment. The ALJ indicated that he gave "significant weight" to their opinions that no listings were met or medically equaled. However, the ALJ in fact rejected the opinion of these consultants that plaintiff had no severe impairment, and found that plaintiff had a severe mental impairment of manic depressive disorder (R. at 17). The ALJ could not give "significant weight" to their opinions that no listings were met or equaled because these two consultants, having found no severe mental impairment at step two, did not address whether plaintiff's impairments met or equaled a listed impairment; specifically, the consultants did not indicate in their report if plaintiff's impairments met the "C" criteria of 12.04 (R. at 304).

The court will next examine the medical evidence pertaining to the "C" criteria of 12.04. The ALJ asserted, without any explanation, that the evidence fails to establish the presence of the "C" criteria of 12.04 (R. at 19). The "C" criteria of 12.04 is as follows:

_____

303). These findings warrant a determination that plaintiff's mental impairments are not severe. 20 C.F.R. 404.1520a(d)(1) (2010 at 373). However, the ALJ, contrary to the opinions of Dr. Warrender and Dr. Jessop, found that plaintiff had moderate limitations in maintaining concentration, persistence or pace, and concluded that plaintiff had a severe impairment of manic depressive disorder (R. at 18, 17).

Medically documented history of a chronic
affective disorder of at least 2 years'
duration that has caused more than a minimal
limitation of ability to do basic work
activities, with symptoms or signs currently
attenuated by medication or psychosocial
support, and one of the following:

1. Repeated episodes of decompensation, each
of extended duration; or

2. A residual disease process that has
resulted in such marginal adjustment that
even a minimal increase in mental demands or
change in the environment would be predicted
to cause the individual to decompensate; or

3. Current history of 1 or more years'
inability to function outside a highly
supportive living arrangement, with an
indication of continued need for such an
arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 508).

The "C" criteria is met when a minimal increase in mental
demands or change in the environment would be predicted to cause
the individual to decompensate.  Dr. Quillen stated that if
plaintiff tried to work, she would try harder and harder to do
her best until she would spiral out of control and crash (R. at
784).  He reported that by October 28, 2004, plaintiff would do
well for a day and then "crash" (become very depressed) (R. at
785).  By December 21, 2004, Dr. Quillen was still limiting her
daily activities so that too much stimulation would not have its
multiplying affect and pull her out of control.  He indicated
that it took her five months to reach even this level of
functioning.  He noted that her "normal" periods were always

12

extremely vulnerable to depressive or hypomanic cycles (R. at 786).

Following the ALJ decision, Dr. Marsh stated that it is only by both medication monitoring and carefully monitoring and pacing/limiting her daily activities and her stress level in a supportive and very low stress environment that she has been able to accomplish her level of symptomology (R. at 801-802). Even her artwork and writing must be done in moderate amounts at paced intervals with breaks to prevent stress from building; when she becomes stressed she has to stop the activity (R. at 802). Dr. Marsh opined that if plaintiff attempted even "low stress" competitive employment, she would expend too much effort and energy in her effort to succeed, and would spiral to a hypomanic or manic state followed quickly by a depressed phase from which it would take several months to recover. She would be depressed, fatigued, drowsy and at first even unable to get out of bed (R. at 802). Dr. Marsh indicated that plaintiff has functioned in this manner since February 2001 (R. at 803-804).

The ALJ offered no explanation for his conclusion that the evidence failed to establish the presence of the "C" criteria. Both treating sources opined that plaintiff would decompensate if she attempted to work.[5] The ALJ did not cite to any medical

---

[5]Defendant's brief argues that "there is no evidence that an increase in mental demands or a change in Plaintiff's environment would cause her to decompensate" (Doc. 17 at 7). However, this

13

evidence disputing their opinions, and there is no medical opinion evidence in the record disputing the opinions of plaintiff's treatment providers on this issue.[6] Dr. Quillen and Dr. Marsh both indicated that plaintiff's mental impairments meet the "A", the "B" and the "C" criteria of 12.04.

The court will also specifically address the statement of the ALJ in support of his finding that plaintiff had moderate restrictions in maintaining concentration, persistence or pace:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. When she is in a "bad period" things take a lot longer. For example, a load of laundry could take several days to complete or need to be redone when she is not doing well. It is difficult for her to complete things she has started. Stress affects her ability to function and her manic depression makes it hard to handle changes in routine. (Exhibit 1E) There are moderate restrictions in this area.

(R. at 18). The ALJ thus found to be credible plaintiff's assertion that it would take her several days to complete laundry (or that the laundry may need to be redone) and that she has difficulty completing things she has started when she is having a

_____

argument has no merit in light of the reports by Dr. Quillen and Dr. Marsh.

[6]The state agency assessment prepared by Dr. Warrender and Dr. Jessop opined that plaintiff had no severe impairment. However, the ALJ rejected their opinion and found that plaintiff had a severe mental impairment. Furthermore, Dr. Warrender and Dr. Jessop did not address in their opinion whether the evidence established the presence of the "C" criteria (R. at 304).

bad period or is not doing well, but concluded that this only constituted a moderate restriction in maintaining concentration, persistence or pace.

Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court finds that no reasonable person would conclude that a person who, when she is not doing well, needs several days to complete laundry and who has difficulty in completing things she has started is able to work.  The ALJ's own finding on this issue clearly indicates that plaintiff is disabled and cannot engage in substantial gainful activity.

**IV.  Did the ALJ err in his finding that plaintiff's daily activities indicate that she is able to work full time?**

In his decision, the ALJ found that plaintiff engaged in activities which showed that she would be able to work full time (R. at 22).  These activities included being busy with her art work, returning from a 3 week vacation and noted to be doing well, being accomplished at writing and art and doing both daily, driving, going shopping once or twice a week in the store, by mail and by computer for food, household needs, clothing, gifts

15

and art supplies, using the telephone daily to visit with family and friends, going to church and visiting with her mother and friends regularly (R. at 22-23).

Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. <u>Thompson</u>, 987 F.2d at 1490; <u>see Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity). One does not need to be utterly or totally incapacitated in order to be disabled. <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001); <u>Jones v. Sullivan</u>, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131

(8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time

17

competitive work.' " Id. (quoting <u>Hogg v.
Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)).
Moreover, we have reminded the Commissioner

> that to find a claimant has the
> residual functional capacity to
> perform a certain type of work, the
> claimant must have the ability to
> perform the requisite acts day in
> and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or visit
> with friends on the phone does not
> qualify as the ability to do
> substantial gainful activity.

<u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

Plaintiff's daily activities, which consist of ordinary life

activities, as the court found in <u>Draper</u>, do not clearly

establish that plaintiff is able to work full time.  As noted

earlier, the ALJ's finding that plaintiff may need several days

to complete a load of laundry or that the laundry may need to be

redone when she is not doing well clearly demonstrates her

inability to work full time.  Furthermore, Dr. Marsh stated that

plaintiff's activities, including her artwork and writing, must

be done in moderate amounts at paced intervals with breaks to

prevent the stress from building.  She can quickly become

overloaded, which leads to deterioration (R. at 802).  Dr. Marsh

indicated that it is only by medication monitoring and

pacing/limiting her daily activities and stress levels that she has been able to accomplish her level of symptomology; thus the control she has achieved is only with a lot of "psycho-social limits" (R. at 801-802). Dr. Quillen stated that plaintiff, as of December 21, 2004, was able to go to art classes, read, do some housework, and be around friends. However, he still limited plaintiff to one outside activity per day and a limited structure of daily activities so that too much stimulation would not have its multiplying effect and pull her out of control; he noted that it took her five months to reach even this level of functioning (R. at 786). Dr. Quillen had earlier noted that he thought plaintiff had a brief hypomanic spell with a business plan for her art work; he told her to back off the commercial thoughts about her art work, and indicated that her art work was therapeutic (R. at 785). A limited ability to do crafts, household chores and grocery shopping does not establish an ability to work full time. Reed v. Barnhart, 399 F.3d 917, 919, 923 (8th Cir. 2005).

**V.  Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at

step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Plaintiff argues that the decision of the Commissioner

should be reversed, and the case remanded for an award of
benefits (Doc. 12 at 36).[7]  Plaintiff filed his application for
benefits on February 10, 2005 (R. at 15); therefore, his
application has been pending for 5 ½ years.  Plaintiff's treating
psychologist and treating psychiatrist both opined that plaintiff
is unable to work due to her mental impairments and resultant
limitations.  The only other medical opinion evidence in the
record regarding plaintiff's ability to work is a psychiatric
review technique form signed by Dr. Warrender and Dr. Jessop,
nonexamining medical sources who opined that plaintiff has no
severe mental impairments.  However, the ALJ rejected their
opinion and found that plaintiff did in fact have a severe mental
impairment, i.e., manic depressive disorder.

The undisputed medical opinion evidence is that plaintiff's
impairments meet 12.04.  Listed impairment 12.04 is met when both
the "A" and the "B" criteria are satisfied, **or** when the
requirements of the "C" criteria are satisfied.  20 C.F.R. Pt.
404, Subpt. P, App. 1 (2010 at 507, emphasis added).  Although
the ALJ never addressed the "A" criteria of 12.04, he found that
the evidence did not establish the presence of either the "B" or
the "C" criteria in this case.  However, plaintiff's treating

---

[7]Defendant did not respond to the argument of plaintiff that
if error is found warranting a reversal of the decision of the
Commissioner, the case should be remanded for an award of
benefits as opposed to a remand for further hearing.

psychologist and treating psychiatrist opined that plaintiff's
impairments meet the "A", "B" and the "C" criteria of 12.04.
There is no medical opinion evidence indicating that the "C"
criteria is not met in this case. The state agency assessment by
Dr. Warrender and Dr. Jessop specifically failed to address the
"C" criteria. Although Dr. Warrender and Dr. Jessop did look at
the "A" and the "B" criteria (R. at 296, 303), they concluded
that plaintiff's mental impairment was not severe. However, the
ALJ rejected that opinion, finding that plaintiff did in fact
have a severe impairment of manic depressive disorder.

Furthermore, the ALJ himself found that when plaintiff is
having a bad period or is not doing well a load of laundry could
take several days to complete or need to be redone, and that it
is difficult for her to complete things she has started. This
finding alone would lead a rational factfinder to no other
conclusion but that plaintiff is unable to work.

The ALJ's findings in this case are not supported by
substantial evidence. A reasonable person would not conclude
from the evidence of record that the plaintiff could perform any
type of substantial gainful activity. Plaintiff's treatment
providers have opined that the plaintiff's impairments meet
listed impairment 12.04 and that she is unable to work, and the
ALJ's own finding that plaintiff needs several days to complete a
load of laundry when she is having a bad period or is not doing

well also clearly demonstrates to any reasonable factfinder her
inability to work. Other than a state agency assessment opining
that plaintiff had no severe mental impairments, an opinion
rejected by the ALJ, the medical evidence that plaintiff is
unable to work is uncontroverted. On these facts, a remand for
further hearing would serve no useful purpose; therefore the case
is reversed and remanded for an award of benefits. <u>See</u> <u>Graham v.</u>
<u>Sullivan</u>, 794 F. Supp. 1045, 1053 (D. Kan. 1992).

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed, and that the case be remanded for an
award of benefits pursuant to sentence four of 42 U.S.C.
§ 405(g).

Dated this 22nd day of September, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge